**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**ROBERT FERRARA,**

                                        **Plaintiff,**

                    **v.**                                              **1:20-CV-474**
                                                                        **(FJS/DJS)**
**STERLING, INC.,**
*d/b/a* **KAY JEWELERS,**

                                        **Defendant.**

_____

**APPEARANCES**                                **OF COUNSEL**

**BERGSTEIN & ULLRICH, LLP**                   **STEPHEN BERGSTEIN, ESQ.**
5 Paradies Lane                                **ANDREA M. MOSS, ESQ.** [1]
New Paltz, New York 12561
Attorneys for Plaintiff

**OGLETREE, DEAKINS, NASH**                    **STEVEN J. LUCKNER, ESQ.**
**SMOAK & STEWART, P.C.**                      **ALEXANDER W. RAAP, ESQ.**
10 Madison Avenue
Suite 400
Morristown, New Jersey 07960
Attorneys for Defendant



**SCULLIN, Senior Judge**

---

[1] Counsel is reminded that, pursuant to Local Rule 10.1(c)(2), all attorneys of record must immediately notify the Court of any change of address within 14 days of a change.  Failure to keep such information current may result in removal from the roll of the Court.  *See* L.R. 10.1(c)(2).

**MEMORANDUM-DECISION AND ORDER**

## I. BACKGROUND

Defendant Sterling Jewelers Inc., doing business as Kay Jewelers, operates as a retailer of diamond jewelry.  *See* Dkt. No. 41-4, Def's Stmt. of Facts, at ¶ 1.[2]  Plaintiff Robert Ferrara worked for Defendant as a store manager from July 2003 until 2007, when he left the company to work for Ultra Diamonds as a district manager.  *See id.* at ¶¶ 5, 12.  In 2013, Defendant purchased Ultra Diamonds, and Plaintiff returned to work for Defendant as a district manager. *See id.*

With respect to Plaintiff's performance upon his return to the company, the parties do not dispute that, from February 2014 through September 2015, Plaintiff's supervisor, Joe Gifford, repeatedly found that Plaintiff's district was below plan expectations and did not achieve minimum performance standards.  *See id.* at ¶¶ 13, 15-16, 19-20, 23-24, 28-29, 32, 34, 38.  In 2016, Mr. Gifford retired, and Chris Gullo became Plaintiff's supervisor.  *See id.* at ¶¶ 44-45.  As his supervisor, Mr. Gullo began completing Plaintiff's evaluations, which continued to show that Plaintiff's district did not meet 100% of sales goals.  *See id.* at ¶¶ 48-51, 56-58, 64-65, 67-68.  Plaintiff and Mr. Gullo allegedly had numerous issues with each other, including that Mr. Gullo called Plaintiff a "dinosaur," told him he was "hatched," and that he did not know what it was like to be a "modern day" manager, which were all allegedly comments based on Plaintiff's age.[3]  *See id.* at ¶ 93.

---

[2] Unless otherwise noted, all facts are undisputed and are taken from Defendant's statement of material facts attached to its motion for summary judgment.  *See* Dkt. No. 41-4.

[3] It is undisputed that Plaintiff was born in 1959, which would make him an individual more than 40 years old and part of a protected class.  *See* Dkt. No. 17, Amend. Compl., at ¶ 6; *see also* 29 U.S.C. § 631(a).

Defendant ultimately demoted Plaintiff to a store manager position at an individual jewelry store on September 3, 2017, allegedly because Plaintiff had "not been effective in his role as District Manager and his district's performance [was] not meeting company standards."[4] *See id.* at ¶¶ 72-73, 75, 78.  Defendant advised Plaintiff that his district was ranked "7 of 8 for the overall top line sales at 88.90 YTD and he [was] 3 for 6 with only 3 of 14 stores making plan.  The district ranked lower than [Plaintiff's] [was] being led by a [district manager] who ha[d] only been in [the] role less than 3 weeks."  *See id.* at ¶ 74.

After his demotion, Plaintiff reported his problems with Mr. Gullo to Defendant's Human Resources Department ("HR") by calling Mr. Gullo's regional HR manager and emailing an HR employee, Kazem Moghtader, to whom he outlined his allegations against Mr. Gullo.  *See id.* at ¶¶ 84-90, 93.[5]  Plaintiff informed Mr. Moghtader that he believed Mr. Gullo demoted him because of his age.  *See id.* at ¶ 93.  After completing an investigation, HR ultimately concluded that there was no discriminatory intent motivating Plaintiff's demotion. *See id.* at ¶ 92.

Plaintiff then took a medical leave in compliance with the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), from February 4, 2018 through April 29, 2018, due to anxiety, depression, and post-traumatic stress.  *See id.* at ¶¶ 95-99.  While out on FMLA leave,

---

[4] Throughout his Amended Complaint, Plaintiff alleges that Defendant demoted him on August 30, 2017.  *See* Dkt. No. 17 at ¶¶ 6, 8, 10, 12, 15.  However, Plaintiff does not dispute in his response to Defendant's statement of material facts that he was demoted to Store Manager effective September 3, 2017.  *See* Dkt. No. 44-1 at ¶ 6.  Although this date changes from Plaintiff's Amended Complaint to his opposition to the pending motion, it does not appear that this is a material fact in dispute requiring a trial.

[5] There is some dispute about the exact date that Plaintiff contacted HR, but, importantly for this motion, there is no dispute that he contacted HR *after* his demotion.  *Compare* Dkt. No. 17 at ¶ 16 *with* Dkt. No. 44-1 at ¶ 84.

on March 20, 2018, Plaintiff filed a charge with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC") against Defendant.  *See id.* at ¶ 102.  Plaintiff complained that, over the course of six months to a year prior to his demotion, Mr. Gullo had referred to him as a "dinosaur" "dozens of times," insisted that he did not know how to speak with younger managers and "did not understand millennials."  *See* Dkt. No. 44-32, 2018 EEOC Compl., at ¶ 4.  Plaintiff also complained that Mr. Gullo ridiculed him for "using an attache case which had a pull handle and wheels," calling it an "old man's bag" and that Plaintiff used the handle as a cane.  *See id.*  Plaintiff remarked that, from August 1, 2016 through January 28, 2017, his performance reviews were "positive," but in April 2017 Mr. Gullo criticized Plaintiff's job performance "only one day after [he] told [Mr.] Gullo to stop calling [him] a dinosaur."  *See id.*

On April 17, 2018, Plaintiff's doctor certified that Plaintiff would be physically able to return to work on April 29, 2018, so long as he would only be required to work 40 hours per week and only be required to work five days per week until May 31, 2018; Defendant agreed to that request.  *See* Dkt. No. 41-4 at ¶¶ 100-101.  After returning from FMLA leave, Plaintiff continued to receive negative performance reviews.  *See id.* at ¶¶ 106-113.  Plaintiff then proceeded to work for Defendant until August 9, 2018, when he resigned from his employment.  *See id.* at ¶ 116.[6]

Plaintiff subsequently filed a second charge with the NYSDHR and EEOC on May 2, 2019, alleging that Defendant committed an "unlawful discriminatory practice relating to employment because of age, opposed discrimination/retaliation, disability" in violation of the

---

[6] Plaintiff characterizes his resignation as a "constructive discharge."  *See* Dkt. No. 44-1 at ¶ 116.

New York State Human Rights Law ("NYSHRL").  *See id.* at ¶ 121.  In October 2019, the NYSDHR issued a Determination and Order after Investigation in which it dismissed Plaintiff's May 2, 2019 Charge, having found no probable cause to believe Defendant engaged in the unlawful discriminatory practices of which Plaintiff complained.  *See* Dkt. No. 41-2, Ex. Z, NYSDHR Order, at 108-110.  The EEOC adopted the NYSDHR's findings with respect to the May 2, 2019 Charge and issued a right to sue letter in February of 2020.  *See* Dkt. No. 41-2, Ex. AA, EEOC Right to Sue Letter, at 112.  The NYSDHR subsequently dismissed Plaintiff's March 20, 2018 Charge "for administrative convenience."  *See* Dkt. No. 41-2, Ex. W, at 98-99. The EEOC then issued a right to sue letter with respect to Plaintiff's March 20, 2018 Charge. *See* Dkt. No. 41-2, Ex. X, at 101.  Plaintiff then commenced this action against Defendant in April of 2020.  *See* Dkt. No. 1.

In Plaintiff's Amended Complaint, he alleged the following causes of action against Defendant:

> (1) Hostile work environment on account of his age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA") and the NYSHRL;
>
> (2) Retaliation against Plaintiff "for complaining about age discrimination and filing charges of discrimination with the EEOC and [NY]SDHR in violation of the ADEA" and the NYSHRL;
>
> (3)  Constructive discharge in violation of the ADEA and the NYSHRL; and
>
> (4) Discrimination on account of Plaintiff's disability in violation of the Americans with Disabilities Act, 41 U.S.C. 12101, *et seq.* ("ADA") and the NYSHRL.

*See* Dkt. No. 17 at ¶¶ 35-38.

Pending before the Court is Defendant's motion for summary judgment, seeking to dismiss Plaintiff's Amended Complaint in its entirety.  *See* Dkt. No. 41.  Plaintiff opposes the motion.  *See* Dkt. No. 44.

## II. DISCUSSION

### A.  Summary judgment standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The movant may satisfy this burden "by pointing out the absence of evidence to support the non-movant's claims." *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986)).

Once the movant meets this initial burden, the non-moving party "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 322-23; *Raskin v. Wyatt Co.*, 125 F.3d 55, 65-66 (2d Cir. 1997)). Specifically, the moving party must cite to "particular parts of materials in the record" or show "that the materials cited [by the non-movant] do not establish the absence or presence of a genuine dispute" as to any material fact.  Fed. R. Civ. P. 56(c)(1)(A)-(B).  The party opposing a motion for summary judgment "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing *D'Amico*, 132 F.3d at

149) (other citation omitted), as "unsupported allegations do not create a material issue of fact,"
*Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citations omitted). "Rather, the
nonmoving party must present 'significant probative evidence tending to support the
complaint.'" *Smith v. Menifee*, No. 00 Civ. 2521 (DC), 2002 U.S. Dist. LEXIS 4943, *9
(S.D.N.Y. Mar. 26, 2002) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253,
290, 20 L. Ed. 2d 569, 88 S. Ct. 1575 (1968)).

### B. Plaintiff's hostile work environment claims

Defendant argues that the Court must dismiss Plaintiff's claim of a hostile work
environment based upon age because Plaintiff "has failed to produce sufficient evidence to
show that he was subject to severe or pervasive treatment based upon his age that altered the
conditions of his employment with Defendant." *See* Dkt. No. 41-1, Def's Memorandum in
Support, at 11.  Plaintiff, on the other hand, contends that a jury may rule in his favor on his
hostile work environment claim because his supervisor, Mr. Gullo, subjected him to numerous
ageist insults.  *See* Dkt. No. 44, Pl's Memorandum in Opposition, at 14-18.  Plaintiff also argues
that, after he was demoted, he reported Mr. Gullo's alleged remarks to HR, who erroneously
found no discriminatory intent with respect to his demotion.  *See id.* at 19-21.

The standards for evaluating hostile work environment claims are identical under both
the ADEA and the NYSHRL.  *See Hossain v. Manhattan Sheraton Corp.*, No. 1:20-CV-3966
(DG)(PK), 2022 U.S. Dist. LEXIS 158694, *37 (E.D.N.Y. Aug. 31, 2022) (quotation omitted).
"To state a hostile work environment claim, a plaintiff must first demonstrate that []he
experienced harassment 'sufficiently severe or pervasive to alter the conditions of [his]
. . . employment and create an abusive working environment.'" *Wheeler v. Bank of N.Y. Mellon*,

No. 6:16-CV-1176 (LEK/TWD), 2018 U.S. Dist. LEXIS 131456, *21 (N.D.N.Y. Aug. 6, 2018)

(Kahn, J.) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan

Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997))).  "In evaluating a hostile work environment

claim, a court must have some 'reason to believe' that the incidents it considers were 'motivated

by the plaintiff's [protected characteristics].'"  *Id.* (quoting *Sanderson v. N.Y. State Elec. & Gas

Corp.*, 560 F. App'x 88, 92 (2d Cir. 2014) [(summary order)]).  "Under the ADEA, individuals

ages forty and over are members of [a] protected class."  *Roge v. NYP Holdings, Inc.*, 257 F.3d

164, 168 (2d Cir. 2001) (citing 29 U.S.C. § 631(a)).

     "'A plaintiff must show not only that []he subjectively perceived the environment to be

abusive, but also that the environment was objectively hostile and abusive. . . . [T]he test is

whether the harassment is of such quality or quantity that a reasonable employee would find the

conditions of h[is] employment altered for the worse.'"  *Rosenfield v. New York State Div. of

Veterans' Affairs*, No. 1:18-CV-1299 (GTS/CFH), 2019 U.S. Dist. LEXIS 162633, *45

(N.D.N.Y. Sept. 24, 2019) (Suddaby, C.J.) (quoting *Montanez* [*v. McDean LLC*], 770 F. App'x

[592,] 594 [(2d Cir. 2019) (summary order)]).  "In assessing whether the conduct is severe or

pervasive enough to create a hostile work environment, courts must look to the totality of the

circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably

interferes with an employee's work.'"  *Id.* (quoting *Gregory v. Daly*, 243 F.3d 687, 694 (2d Cir.

2001)).  "'Simple teasing, offhand comments, and isolated incidents (unless extremely serious)

will not amount to discriminatory changes in the terms and conditions of employment.'"  *Id.*

(quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 778, 118 S. Ct. 2275, 141 L. Ed. 2d 662

(1998)).

Notably, "'hostile work environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.'" *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (quoting [*AMTRAK v.*] *Morgan*, 536 U.S. [101,] 115 [(2002)] (internal citation omitted)). As such, courts in this Circuit have repeatedly found that a plaintiff's termination, demotion, suspension, or failure to be promoted are "discrete discriminatory acts rather than repeated and pervasive conduct" that would constitute a hostile work environment. *Guy v. MTA N.Y. City Transit*, 407 F. Supp. 3d 183, 196 (E.D.N.Y. 2016); *see Gittens v. Winthrop Hospitalist Assocs., P.C.*, No. 19-CV-5070 (LDH) (LB), 2022 U.S. Dist. LEXIS 29795, *19 (E.D.N.Y. Feb. 18, 2022); *Thomson v. Odyssey House*, No. 14-CV-3857 (MKB), 2015 U.S. Dist. LEXIS 125887, *32-*33 (E.D.N.Y. Sept. 21, 2015). Thus, to the extent that Plaintiff argues that his demotion constituted a hostile work environment, the Court cannot consider it as such. The Court must instead consider whether Mr. Gullo's allegedly ageist remarks toward Plaintiff were so severe and pervasive as to constitute a hostile work environment.

In his Amended Complaint, Plaintiff alleges that – despite having "excellent" and "positive" performance reviews in 2016 and 2017 – his supervisor, Mr. Gullo, repeatedly referred to Plaintiff in the six months to a year prior to his demotion as a "dinosaur" on "countless occasions," who had been "hatched," insisted that Plaintiff did not know how to speak with younger managers, stated that he "did not understand the so-called millennials," and that he did not know how to be a "modern day" manager. *See* Dkt. No. 17 at ¶¶ 10-13. Plaintiff alleges that those accusations were obviously references to his age and demonstrated Mr.

Gullo's age discrimination against Plaintiff, as well as his stereotypic belief that Plaintiff was not capable of performing his work effectively because of his age. *See id.* at ¶¶ 12-13.

Plaintiff also alleges that Mr. Gullo ridiculed him for using an attache case with a pull handle and wheels, which Mr. Gullo called an "old man's bag" and stated that Plaintiff used the handle as a cane. *See id.* at ¶ 14. Plaintiff additionally alleges that Mr. Gullo repeatedly called him "grandpa" in the presence of his family members and other district managers. *See id.* "When Plaintiff asked [Mr.] Gullo why he was calling him grandpa, [Mr.] Gullo said Plaintiff needed thicker skin, suggesting that Plaintiff was overly sensitive to these ageist insults." *See id.* Similarly, Plaintiff alleges that Mr. Gullo began "ranting and was unable to articulate any concerns about Plaintiff's job performance" after Plaintiff asked him to stop making ageist comments. *See id.* at ¶ 11.

Plaintiff further alleges that, in August 2017, he was not feeling well, and Mr. Gullo pulled him aside and commented that Plaintiff was "look[ing] sick." *See id.* at ¶ 15. According to Plaintiff, when Mr. Gullo began discussing Plaintiff's job performance, Plaintiff reminded him that he was not feeling well. *See id.* Plaintiff alleges that Mr. Gullo replied that Plaintiff should maybe "just bounce, step down, become a manager, retire." *See id.* Shortly thereafter, Mr. Gullo demoted Plaintiff to the position of Store Manager. *See id.*

After his demotion, Plaintiff allegedly contacted HR and complained about the age discrimination surrounding his demotion. *See id.* at ¶ 16. In his deposition, Plaintiff explained that he contacted Mr. Moghtader the day after he was demoted, they had a phone meeting, and Plaintiff "pretty much reported the entire ordeal to him." *See* Dkt. No. 41-2, Pl's Dep., at 166:11-15. Plaintiff also reported to Mr. Moghtader that he believed others felt they were being harassed as well, and they discussed having a "town hall meeting," but that meeting never

occurred.  *See id.* at 166:15-20.  Plaintiff also attached his March 2018 Charge with the EEOC

to his memorandum in opposition, which included emails between Plaintiff and Mr. Moghtader,

including a November 25, 2017 email from Plaintiff inquiring about the status of his

investigation and reiterating the claims he made to Mr. Moghtader on the phone, including that

Mr. Gullo had called Plaintiff a "dinosaur," who "hatched," did not know how to be a "modern

day" manager and that he did not know how to talk to "millenniums [sic]."  *See* Dkt. No. 44-29

at Ex. 3.

> The Court finds that Mr. Gullo's allegedly ageist remarks to Plaintiff constituted

offhand, isolated comments that, while inappropriate, were not so severe and pervasive that they

constituted a hostile work environment.  Plaintiff did not complain about the comments until

after he was demoted, which occurred between six months and one year after Mr. Gullo

allegedly began making them.  Plaintiff does not point to any evidence from other employees

who overheard these comments, experienced such comments directed at them, or to whom he

may have complained about such comments.  Even when viewing the facts in the light most

favorable to Plaintiff, he has failed to show that Mr. Gullo's occasional remarks to him about his

age, including that he was a "dinosaur," would have objectively impacted an employee so

severely that they would have altered the conditions of his or her employment.  As such, the

Court grants Defendant's motion for summary judgment with respect to Plaintiff's hostile work

environment claims.


### C.  Plaintiff's retaliation claims

> Defendant next argues that the Court must dismiss Plaintiff's retaliation claims because

his NYSHRL claim is procedurally improper, his ADEA claim is untimely, and he failed to

establish that any adverse employment action he suffered was not the direct result of his poor performance. *See* Dkt. No. 41-1 at 16. According to Plaintiff, his retaliation claims are both procedurally proper and timely, and a jury could make a reasonable inference that Defendant retaliated against him in that it demoted him and gave him negative performance reviews just days after he accused his supervisor of ageism, which is a protected activity. *See* Dkt. No. 44 at 27-28.

"'[O]nce a complainant elects the administrative forum by filing a complaint with the [NYSDHR], a subsequent judicial action on the same complaint is generally barred unless one of the three exceptions in the statute is applicable.'" *McCain v. Dimon & Bacorn*, No. 3:10-CV-766, 2011 U.S. Dist. LEXIS 74168, *7 (N.D.N.Y. July 11, 2011) (McAvoy, J.) (quoting *Johnson v. County of Nassau*, 411 F. Supp. 2d 171, 184 (E.D.N.Y. 2006)). Those exceptions include orders dismissing charges on the grounds of administrative convenience, untimeliness, or that the election of remedies is annulled. *See id.* at *7-*8; *see also* N.Y. Exec. L. § 297(9). Furthermore, "'[a]s a prerequisite to commencing a [retaliation] claim under . . . the ADEA, a claimant must file a charge with the EEOC within 300 days of the allegedly unlawful employment action.'" *Bruce-Micah v. Baptist Rehab. Nursing Ctr.*, No. 1:22-CV-153 (DNH/CFH), 2022 U.S. Dist. LEXIS 113046, *8, *8 n.5 (N.D.N.Y. June 27, 2022) (Hummel, M.J.) (quoting *Wierzbicki v. Cnty. of Rensselaer, N.Y.*, No. 14-CV-950 (GLS/RFT), 2015 U.S. Dist. LEXIS 105748, 2015 WL 4757755, at *3 (N.D.N.Y. Aug. 12, 2015) (citing *Valtchev v. City of N.Y.*, 400 F. App'x 586, 588 (2d Cir. 2010) (summary order) (citations omitted))).

Defendant contends that Plaintiff's retaliation claim pursuant to the NYSHRL is procedurally improper because he pursued his retaliation claim before the NYSDHR when he filed his May 2019 Charge with the NYSDHR and the EEOC. *See* Dkt. No. 41-1 at 16-18.

Similarly, Defendant argues that Plaintiff did not suffer any adverse employment experiences within 300 days of filing his May 2019 Charge. *See id.* at 18-19. In his May 2019 Charge, Plaintiff charged Defendant "with age and disability discrimination since March 20, 2018, as well as retaliation for filing the prior discrimination charge at that time." *See* Dkt. No. 44-30, May 2019 Charge, at ¶ 15. After investigating Plaintiff's May 2019 Charge, the NYSDHR determined that there was no probable cause to believe that Defendant engaged in the practices charged. *See* Dkt. No. 41-2, Ex. Z, at 108.

Notwithstanding this finding on his May 2019 Charge, Plaintiff appears to argue that his retaliation claims in this action stem from the allegations in his March 2018 Charge, in which he complained that Mr. Gullo demoted him shortly after he asked Mr. Gullo to stop making ageist comments toward him. *See* Dkt. No. 44 at 27; Dkt. No. 44-29, March 2018 Charge, at ¶ 4. The NYSDHR dismissed Plaintiff's March 2018 Charge "for administrative convenience," thus permitting Plaintiff to maintain his right to sue Defendant for that claim. *See* Dkt. No. 44-31 at 1. Furthermore, Plaintiff's demotion occurred fewer than 300 days before he filed his March 2018 charge. *See* Dkt. No. 41-4 at ¶ 72. Thus, because Plaintiff's retaliation claim is apparently limited to his claim in his March 2018 Charge that his demotion was a response to his complaint to Mr. Gullo to cease making ageist comments, and that complaint and demotion occurred within the 300 days preceding Plaintiff's charge, the Court finds that Plaintiff's NYSHRL and ADEA retaliation claims against Defendant are both procedurally proper and timely.[7] The Court therefore turns to the merits of Plaintiff's retaliation claims.

---

[7] The Court acknowledges Defendant's argument that Plaintiff abandoned his first charge by filing a subsequent charge with identical allegations, but Defendant did not point to any regulation or caselaw, nor has the Court found any, to support such argument. The Court further notes that this is a particularly unique situation in which the NYSDHR issued Plaintiff a

"To make out a prima facie case of retaliation, a plaintiff must make four showings: that '(1) []he engaged in a protected activity; (2) h[is] employer was aware of this activity; (3) the employer took adverse employment action against h[im]; and (4) a causal connection exists between the alleged adverse action and the protected activity.'" *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (quoting [*Schiano v. Quality Payroll Sys.*, 445 F.3d 597,] 608 [(2d Cir. 2006)]).  "'Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action.'"  *Id.* (quoting *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001)).  "If the employer demonstrates a legitimate, non-discriminatory reason, then '[t]he burden shifts . . . back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation.'"  *Id.* (quoting [*Raniola*, 243 F.3d] at 625).

"'The term "protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination.'"  *Comerford v. N. Syracuse*, No. 5:18-cv-01143 (BKS/TWD), 2021 U.S. Dist. LEXIS 46299, *92-*93 (N.D.N.Y. Mar. 12, 2021) (Sannes, J.) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)).  "Further, 'opposition to a [statutory] violation need not rise to the level of a formal complaint in order to receive statutory protection.'"  *Id.* at *93 (quoting [*Cruz*, 202 F.3d at 566]).  "Instead, '"opposition" includes activities such as "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges."'"  *Id.* (quoting [*Cruz*, 202 F.3d at 566] (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990))).  "'"[I]mplicit in the

_____

right to sue letter on his first charge *after* issuing a finding of no probable cause with respect to his second charge.

requirement that the employer [was] aware of the protected activity is the requirement that the [employer] understood, or could have reasonably understood," that the plaintiff's complaints, constituting the protected activity, were based on'" statutorily prohibited conduct.  *Id.* (quoting *Rosioreanu v. City of New York*, 526 F. App'x 118, 120 (2d Cir. 2013) [(summary order)] (quoting *Galdieri-Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998))).

      '"An actionable adverse employment action is a "materially adverse change in the terms and conditions of employment."'"  *Williams v. PMA Cos.*, 564 F. Supp. 3d 32, 45 (N.D.N.Y. 2021) (Suddaby, C.J.) (quoting *Kairam v. West Side GI, LLC*, 793 F. App'x 23, 27 (2d Cir. 2019) (quoting *Kassner v. 2d Ave. Delicatessen Inc.*, 496 F.3d 229, 238 [2d Cir. 2007])). '"'Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'"'  *Id.* at *45-*46 (quoting *Kairam*, 983 F. App'x at 27 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 [2d Cir. 2015])).  "[A] negative performance review, without more, does not represent an adverse employment action."  *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 22 (2d Cir. 2015) (citations omitted).

      '"[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'"  *Colistra v. Cairo-Durham Cent. Sch. Dist.*, No. 6:16-cv-01053 (BKS/TWD), 2018 U.S. Dist. LEXIS 149699, *44 (N.D.N.Y. Sept. 4, 2018) (Sannes, J.) (quoting *Hicks v. Baines*,

593 F.3d 159, 170 (2d Cir. 2010) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117

(2d Cir. 2000))).  "However, '[a]n intervening event between the protected activity and the

adverse employment action may defeat the inference of causation where temporal proximity

might otherwise suffice to raise the inference.'"  *Rumsey v. Northeast Health, Inc.*, 89 F. Supp.

3d 316, 336 (N.D.N.Y. 2015) (quoting *Joseph v. Marco Polo Network, Inc.*, No. 09 Civ. 1597,

2010 U.S. Dist. LEXIS 119713, at *56, 2010 WL 4513298, at *18 (S.D.N.Y. 2010); *see*

*Gubitosi v. Kapica*, 154 F.3d 30, 33 (2d Cir. 1998) (parenthetical omitted)).

   To set forth his prima facie case of retaliation, Plaintiff alleges that his supervisor, Mr.

Gullo, made ageist comments toward him; and, when he asked Mr. Gullo to stop making those

comments, Mr. Gullo demoted him the next day.  *See* Dkt. No. 17 at ¶¶ 11-12; Dkt. No. 44 at 14

(citing Dkt. No. 44-29 at ¶ 4).  Plaintiff did not make any formal complaints to HR about Mr.

Gullo's allegedly ageist comments until *after* he was demoted.  Nonetheless, the Court finds that

Plaintiff's conduct in making an informal complaint to a supervisor – Mr. Gullo – about

allegedly discriminatory behavior constitutes protected activity of which Defendant was aware.

Plaintiff alleges that he was demoted because of his protected activity, which is an adverse

employment action.  Finally, Plaintiff shows that a causal connection exists between his

demotion and the adverse employment activity through both the temporal proximity between

his complaint to Mr. Gullo and the fact that Mr. Gullo demoted him the next day, as well as

evidence of animus in that Mr. Gullo was the individual who made the allegedly ageist remarks

to Plaintiff.  As such, the Court finds that Plaintiff has established his prima facie case of

retaliation in violation of the ADEA and the NYSHRL.

   The Court must next consider whether Defendant has proffered a legitimate,

nondiscriminatory reason for Plaintiff's demotion.  In this case, Defendant points to Plaintiff's

performance evaluations from 2014 through the date of his demotion.  Soon after returning to

work for Defendant, Plaintiff's supervisor, Joe Gifford, remarked in a February 2014

performance appraisal that Plaintiff's sales production for his district was 7.3% below plan

expectations, and he noted that Plaintiff "must get his team focused on standard performance

and achievement.  He must make more timely decisions in order to maximize performance and

continue to grow [the] business and [his] career."  *See* Dkt. No. 41-4 at ¶¶ 13, 15-16.  Mr.

Gifford made similar remarks in Plaintiff's August 2014 performance appraisal, in which he

noted that Plaintiff's sales production for his district at that time was 6.7% below plan

expectations, and Plaintiff needed to "develop a strategic plan for his district in order to gain

commitment from [his] team and peers."  *See id.* at ¶¶ 19-20.  A January 2015 Team Member

Counseling Report further stated that it is a district manager's "objective to achieve a minimum

of 100% of Sales Goals and achieve all 6 performance standards," yet Plaintiff only achieved

91.86% of his sales goals and "2/6 in achieving minimum performance standards," which was

"[u]nacceptable."  *See id.* at ¶¶ 23-24.  In his January 2015 performance appraisal, Plaintiff's

sales were identified as "the lowest in the region and his standards performance was

unacceptable," he was required to "refine his practices in effort to meet expectations," and his

sales production for his district was below plan expectations by 8.48%.  *See id.* at ¶¶ 28-29.  In

August 2015, Plaintiff's performance appraisal indicated that he "must improve managing the

details" and "managing the steps expected by [Defendant]."  *See id.* at ¶ 32.  That performance

appraisal also noted that only 6 out of 13 stores in Plaintiff's district were "over plan"

expectations in the year-to-date.  *See id.*  Plaintiff's district's sales production was also 1.3%

below plan expectations.  *See id.* at ¶ 34.  In a September 2, 2015 Team Member Counseling

Report, the report noted that Plaintiff needed to "[b]uild necessary action plans, implement

those actions, [and] hold [the] team and [him]self accountable in order to achieve District sales results by year end."  *See id.* at ¶ 38.  By Plaintiff's January 2016 performance appraisal, his district was 3.0% above sales production plan expectations.  *See id.* at ¶ 41.

After Mr. Gifford retired in 2016, Mr. Gullo became Plaintiff's supervisor and began completing his evaluations.  In November 2016, Mr. Gullo stated in Plaintiff's Employee Counseling Report that Plaintiff's "district is currently not achieving," his district only met 94.60% of its sales objectives, and 10 of 15 stores in the district were below 100% of sales goals.  *See id.* at ¶¶ 48-50.  Additionally, Plaintiff's district "achieved or exceeded sales plan in only 6 of the past 26 weeks."  *See id.* at ¶ 51.  In his January 2017 report, Mr. Gullo also noted that Plaintiff's district failed to meet company expectations because 9 out of 15 stores were below 100% sales, and his district completed the fiscal year at only 93.51% of its expected sales goals.  *See id.* at ¶¶ 56-57.  In fact, Plaintiff's district achieved minimum sales expectations in only 3 out of 12 months in the 2016 fiscal year.  *See id.* at ¶ 58.  Finally, in Mr. Gullo's May 2017 report, he noted that Plaintiff's district had failed to improve, as only 5 out of his 14 stores were above the minimum sales expectation and the district as a whole achieved 84.54% of its sales expectations.  *See id.* at ¶¶ 64-65.  Mr. Gullo also noted that 6 out of 12 managers in Plaintiff's district and 8 out of 13 assistant managers in his district were "below sales standard [year-to-date]," and Plaintiff had "consistently underperforming leadership and sales positions[]."  *See id.* at ¶ 67.  Mr. Gullo remarked that Plaintiff's district did not meet expectations and such "level of sales productivity and succession management is unacceptable." *See id.* at ¶ 68.

Defendant demoted Plaintiff to the position of "Store Manager" of a jewelry store in Albany, New York, on September 3, 2017, allegedly because Plaintiff had "not been effective in

his role as District Manager and his district's performance [was] not meeting company standards." *See id.* at ¶¶ 72-73, 75.  Defendant advised Plaintiff that his district was ranked "7 of 8 for the overall top line sales at 88.90 YTD and he [was] 3 for 6 with only 3 of 14 stores making plan.  The district ranked lower than [Plaintiff's] [was] being led by a [district manager] who ha[d] only been in [the] role less than 3 weeks." *See id.* at ¶ 74.

Defendant also submitted affidavits from Brian Watson, a Human Resources Business Partner, and Jennifer Hammond, a Vice President of Divisional Operations, who both attested that they reviewed all performance-related statistics during Plaintiff's employment leading up to his demotion; and, based on their own independent assessments of those performance statistics, they joined in the recommendation to demote Plaintiff from his position as District Manager "based on his territory's inadequate sales performance and his inability to serve as a leader for the employees he supervises." *See* Dkt. No. 45-3, Watson Aff., at ¶ 3; Dkt. No. 45-2, Hammond Aff., at ¶ 3.  Mr. Watson further declared that, in addition to his review of Plaintiff's district's sales performance statistics, he had "multiple conversations with Plaintiff regarding his job performance" and indicated to Plaintiff during his feedback "about his need to improve his performance"; however, "Plaintiff did not commit to improve the sales performance of his district." *See* Dkt. No. 45-3 at ¶¶ 4-6.  Based on this and all of the above-stated evidence, including Plaintiff's continuously negative performance evaluations, the Court finds that Defendant has met its burden of showing a legitimate, non-discriminatory reason for demoting Plaintiff.

The Court must lastly consider whether Defendant's allegedly legitimate reason for demoting Plaintiff was pretext for a retaliatory reason.  Notably, Plaintiff generally does not dispute the sales numbers, statistics, and other findings reported in his performance evaluations

from 2014 through the date of his demotion in 2017. *See* Dkt. No. 44-1 at ¶¶ 13-71. Instead, to support his argument that Defendant's reasoning was pretext, Plaintiff submitted dozens of exhibits allegedly demonstrating his excellence as a district manager. *See generally* Dkt. No. 44-2. For example, Plaintiff attached documentation that he attended Defendant's Best of 2013 Royal Caribbean cruise, Defendant's all-inclusive trip to Cabo San Lucas, and Defendant's National Conference in Walt Disney World. *See* Dkt. Nos. 44-3, 44-26, 44-28. Plaintiff attached certificates awarding him the title of 2014-2015 Le Vian Brand Ambassador for Le Vianese gems, diamonds, and gold, and for completing the Tolkowsky True Brilliance training. *See* Dkt. Nos. 44-6, 44-17. The Court finds, however, that this evidence does not raise a question of pretext as it does not dispute that Plaintiff's sales record for the district that he supervised was found unacceptable not only by Mr. Gullo, but also by his previous supervisor, Mr. Gifford, and Mr. Watson and Ms. Hammond.

With respect to his sales and other performance achievements, Plaintiff attached a brochure from the Gemmie Awards, honoring him as the Mall District Manager with the highest net profit percentage increase in 2015. *See* Dkt. Nos. 44-15, 44-16. Plaintiff also attached certificates of achievement, dated May 2015, showing that he received awards with respect to his sales, customer experience, credit applications, repairs, and PPP. *See* Dkt. Nos. 44-8, 44-9, 44-10, 44-11, 44-12. However, Plaintiff does not dispute that, by August 2015, his district's sales production was 1.3% below plan expectations, he was required to focus on meeting standards and delivering results, and he was told to improve on "managing the details." *See* Dkt. No. 44-1 at ¶¶ 32-34. Similarly, in May 2016, Plaintiff received awards for his sales standard, credit applications, "add on's," guest experience index, ESP, and repair sales. *See* Dkt. Nos. 44-18, 44-19, 44-20, 44-21, 44-22, 44-23, 44-24, 44-25. Despite these awards, Plaintiff

does not dispute that, in November 2016, his district did not meet expected sales objectives, 10 out of 15 stores were below sales goals, and he only achieved or exceeded sales plans in 6 out of 26 weeks.  *See* Dkt. No. 44-1 at ¶¶ 49-51.

In addition to admitting these facts, Plaintiff also admitted, in both January and May of 2017, that more than half of the stores in his district failed to meet company expectations, he had been told to "teach, train, and follow up on the behaviors that are proven to lead to sales success," and he was instructed to hold all team members accountable to the minimum company expectations.  *See id.* at ¶¶ 56-60, 64.  Plaintiff further admitted that, in May 2017, he had been advised that he needed to maintain sales at or above corporate minimum expectations and his failure to do so would "result in further disciplinary action up to and including separation or demotion from current District Manager position."  *See id.* at ¶ 69.  Plaintiff also has not submitted any evidence that he won any awards in the latter half of 2016 or in 2017, which would have been within the year leading up to his demotion.

Thus, although Plaintiff showed some evidence of positive achievements either unrelated to sales or during a time period more than one year prior to his demotion, the Court finds that this evidence does not create a genuine issue of material fact as to whether Defendant's legitimate basis for demoting Plaintiff – specifically, his negative performance reviews – was a pretextual excuse to hide its true reason for his demotion, *i.e.*, a desire to retaliate against Plaintiff for complaining to his supervisor about allegedly ageist remarks that supervisor made to him.  As such, the Court grants Defendant's motion for summary judgment with regard to Plaintiff's NYSHRL and ADEA retaliation claims.

### D.  Plaintiff's disability discrimination claims

Defendant argues that the Court must dismiss Plaintiff's claims for disability discrimination because he pursued his NYSHRL claim before the NYSDHR, his ADA claim is untimely, and neither claim is meritorious.  *See* Dkt. No. 41-1 at 25-27.  In response, Plaintiff does not address his ADA or NYSHRL disability discrimination claims.  Instead, he merely references his ADA claim with respect to his constructive discharge claim.  *See* Dkt. No. 44 at 24-26.  As Defendant points out in its reply, however, Plaintiff did not allege in his Amended Complaint that he was constructively discharged in violation of the ADA; he only alleged that he was constructively discharged in violation of the ADEA and the NYSHRL.  *See* Dkt. No. 45 at 12-13; *see also* Dkt. No. 17 at ¶¶ 37-38.  Because Plaintiff apparently abandoned his ADA and NYSHRL disability discrimination claims, the Court grants Defendant's motion for summary judgment and dismisses those claims.  *See Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) (holding that "[f]ederal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way" (citation omitted)).

### E.  Plaintiff's constructive discharge claims

To establish a constructive discharge claim, "a plaintiff must show that the employer 'intentionally creates a work atmosphere so intolerable that [the employee] is forced to quit involuntarily.'"  *Miller v. Praxair, Inc.*, 408 F. App'x 408, 410 (2d Cir. 2010) (summary order) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 151-52 (2d Cir. 2003)).  "'The inquiry is objective: Did [the] working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?'"  *Id.* (quoting *Penn. St. Police v. Suders*, 542

U.S. 129, 141, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004)).  The Second Circuit has clarified

that this standard "is a demanding one, because 'a constructive discharge cannot be proven

merely by evidence that an employee . . . preferred not to continue working for that employer'

or that 'the employee's working conditions were difficult or unpleasant.'"  *Id.* (quoting *Spence v.*

*Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993)).

As discussed above, Plaintiff did not allege a cause of action for constructive discharge

under the ADA.  *See* Dkt. No. 17 at ¶ 37.  Plaintiff's cause of action clearly states that

"Defendant constructively discharged [him] in violation of the ADEA and the New York HRL."

*See id.*  Thus, to the extent that Plaintiff argues that his alleged constructive discharge in

violation of the ADA and NYSHRL was based on disability, the Court rejects that claim.  *See*

*Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001) (summary order) (holding that "it is

inappropriate to raise new claims for the first time in submissions in opposition to a summary

judgment motion" (citation omitted)).  Accordingly, the Court may only consider Plaintiff's

constructive discharge claim as he pled it in his Amended Complaint, *i.e.*, as a violation of the

ADEA and NYSHRL based on age.  *See id.*

As to Plaintiff's NYSHRL constructive discharge claim, the NYSDHR concluded the

following in its Determination and Order After Investigation:

> Finally, [Plaintiff] alleged that he was forced to resign because
> [Defendant] made the workplace unbearable (constructive
> discharge).  However, the investigation has not revealed that
> [Plaintiff] was constructively discharged because of his disability
> or because of opposed discrimination.  Normal workplace
> supervision is not harassment, even if it is negative or upsetting to
> the employee.  The investigation did not find any further actions
> taken by [Defendant], other than normal workplace supervision.
> While [Plaintiff] did not find having his work criticized pleasing;
> this [i]s not enough to rise to the level of workplace hostility
> needed for a constructive discharge claim.  Additionally,
> [Plaintiff] alleges that, the day before he resigned, he had visited

> the doctor who told him the stress from work was exacerbating his condition.  However, [Plaintiff] also acknowledged that he did not discuss his last doctor's visit with [Defendant] or ask for any further accommodations.  Given this information, there is no evidence to show that [Plaintiff] was forced to quit by [Defendant].

*See* Dkt. No. 41-2, Ex. Z, at 109-110.[8]

As discussed with respect to Plaintiff's retaliation claims, once a complainant elects to pursue his charge in an administrative forum, he is barred from pursuing subsequent judicial action on that same charge unless the administrative forum dismisses the charge on grounds of administrative convenience, untimeliness, or the election of remedies is annulled.  *See McCain*, 2011 U.S. Dist. LEXIS 74168, at *7-*8; *see also* N.Y. Exec. L. § 297(9).  It is clear from the NYSDHR's Order that it did not dismiss Plaintiff's complaint of constructive discharge as alleged in his May 2019 Charge for any of these reasons, and it is undisputed that Plaintiff did not appeal this Order.  *See* Dkt. No. 44-1 at ¶ 104.  Accordingly, the Court finds that Plaintiff's subsequent complaint of constructive discharge in this action is barred.  As such, the Court grants Defendant's motion for summary judgment on Plaintiff's constructive discharge claim brought pursuant to the NYSHRL on the basis of age.

With respect to Plaintiff's constructive discharge claim brought pursuant to the ADEA, he alleges that Mr. Gullo made ageist remarks to him, such as calling him a "dinosaur" that had "hatched," and stating he did not know how to be a "modern day" manager.  *See* Dkt. No. 17 at ¶¶ 11-13.  Plaintiff also complains that Mr. Gullo made negative remarks regarding his performance, which he believed was "excellent," and that such reviews were likely the result of

---

[8] Notably, it appears from this paragraph that Plaintiff pled a disability claim in his charge before the NYSDHR, even though he did not plead one in his Amended Complaint in this action.

ageism.  *See id.* at ¶¶ 10-12.  Although these instances were likely unpleasant, the Court finds that Plaintiff has not met the "demanding" burden of showing that these isolated comments and negative performance reviews made his workplace "intolerable" so as to effectively force him to quit.  Additionally, the evidence reveals that Mr. Gullo left the company around the same time Plaintiff took his FMLA leave in February of 2018, and Plaintiff admits that no one else made any ageist comments toward him, so there was at least a six-month gap between the time that Mr. Gullo could have made any comments to Plaintiff and his resignation in August of 2018.  Accordingly, the Court grants Defendant's motion for summary judgment with regard to Plaintiff's constructive discharge claim brought pursuant to the ADEA.

### III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment, *see* Dkt. No. 41, is **GRANTED in its entirety**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case.

**IT IS SO ORDERED.**

Dated:  March 16, 2023
      Syracuse, New York

Frederick J. Scullin, Jr.
**Senior United States District Judge**